David R. Markham (SBN 071814)
*dmarkham@markham-law.com*
Maggie Realin (SBN 263639)
*mrealin@markham-law.com*
Lisa Brevard (SBN 323391)
*lbrevard@markham-law.com*
**THE MARKHAM LAW FIRM**
888 Prospect Street, Suite 200
La Jolla, CA 92037
Tel.: (619) 399-3995 Fax: (619) 615-2067

Attorneys for Plaintiffs on behalf of themselves
and all others similarly situated
[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAJE GILL, CRAIG LAMBERT, WILLIAM COLLIGNON, and CHRISTINA FERREIRA, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., RAISER, LLC, PORTIER LLC, and SCHLEUDER, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATION OF FAIR LABOR STANDARDS ACT (29 U.S.C. § 201, *et seq.*)**<br>**(2) FAILURE TO PAY MINIMUM WAGES;**<br>**(3) FAILURE TO PAY OVERTIME WAGES;**<br>**(4) FAILURE TO REIMBURSE BUSINESS EXPENSES;**<br>**(5) FAILURE TO PROVIDE PROPERLY ITEMIZED WAGE STATEMENTS;**<br>**(6) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), Bus. & Prof. Code § 17200 *et seq.*;**<br><br>**DEMAND FOR JURY TRIAL** |

1      Plaintiffs TAJE GILL, CRAIG LAMBERT, WILLIAM COLLIGNON, and CHRISTINA

2  FERREIRA ("Plaintiffs"), by and through their attorneys of record, bring this Class and Collective

3  Action Complaint against UBER TECHNOLOGIES, INC., RAISER, LLC, PORTIER, LLC, and

4  SCHLEUDER, LLC, ("Uber" or "Defendant"), and respectfully allege the following:

5                          **NATURE OF THE ACTION**

6      1.    This is a class and collective action, against Uber Technologies, Inc., its wholly

7  owned subsidiary, Raiser, LLC, Uber Technologies, Inc.'s subsidiary Portier, LLC, and Uber

8  Technologies, Inc.'s subsidiary Schleuder, LLC seeking all available relief for unpaid minimum

9  wages, unpaid overtime wages, failure to provide accurate wage statements, and unreimbursed

10  business expenses pursuant to the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* ("FLSA"), the

11  California Labor Code, the applicable Wage Order, and Business and Professions Code section

12  17200, *et seq*., ("UCL"), as listed in the subsequent paragraphs.

13      2.    Plaintiffs allege, on behalf of themselves and all similarly situated, current and

14  former Uber drivers in the United States, with the exception of Uber drivers in the State of New

15  York, who are a part of the collective alleged in *Aquino v. Uber Technologies, Inc., et al*., Case

16  No., 1:22-cv-04267, United States District Court for the Southern District in New York, who opted

17  out of the arbitration agreement in their employment agreements with Defendant, and who elect to

18  opt into this action pursuant to the FLSA (hereinafter "Collective Action Members"), that they are

19  entitled to inter alia: (1) unpaid minimum wages; (2) unpaid overtime wages for hours worked

20  above forty (40)  in a work week, as required by law; and (3) liquidated damages pursuant to the

21  FLSA.

22      3.    Plaintiff Gill also brings this action under California law pursuant to Rule 23 of the

23  Federal Rules of Civil Procedure on behalf of himself and all similarly situated current and former

24  Uber drivers in California, who opted out of the arbitration agreement in their employment

25  agreements with Defendant, and are entitled to, *inter alia,* unpaid minimum wages, unpaid

26  overtime, accurate wage statements, and unreimbursed business expenses as required by the

27  California Labor Code, applicable Wage Order, and UCL. He seeks recovery of damages for

28  himself and the California Class, as well as declaratory and injunctive relief, requiring Uber to

1    reclassify its drivers as employees in California.

2          4.      As described further below, Uber has misclassified its drivers and thereby deprived

3    them of protections they are entitled to under the FLSA and California Labor Code. Based on the

4    drivers' misclassification as independent contractors, Uber has failed to guarantee and pay its

5    drivers for all the hours worked at minimum wage after work-related expenses, and it has failed to

6    pay overtime premiums for hours worked in excess of eight hours per day or forty hours per week

7    in violation of Cal. Lab. Code §§ 1182.12, 1194.2, 1194, 1197, 1197.1, 1198, 1199, and 510. Uber

8    has also failed to provide properly itemized wage statements that include all of the requisite

9    information, including hours worked and hourly wages that are accessible outside the Uber

10   Application or Uber website in violation of California Labor Code § 226(a). Uber has also

11   unlawfully required drivers to pay business expenses (including, but not limited to, the cost of

12   maintaining their vehicles, gas, insurance, phone and data expenses, and other costs) in violation of

13   California Labor Code § 2802. Uber's continued misclassification of its drivers as independent

14   contractors is willful misclassification in violation of California Labor Code § 226.8.

15         5.      The California legislature has passed a statute known as Assembly Bill 5 (or "A.B.

16   5"), which codifies the 2018 California Supreme Court decision, *Dynamex Operations W., Inc. v.*

17   *Superior Court*, 4 Cal. 5th 903, 416 P.3d1 (2018), *reh'g denied* (June 20, 2018), under which an

18   alleged employer cannot justify classifying workers as independent contractors who perform

19   services within its usual course of business. *See* Cal. Lab. Code § 2750.3. The purpose and intent of

20   this statute is to ensure that companies, including specifically Uber, stop misclassifying their

21   workers as independent contractors. Although Uber attempted to obtain a "carve-out" from this

22   statute, it did not obtain such an exemption, and the legislature passed the statute so that it would

23   include Uber drivers. Nevertheless, Uber has defied this statute and continued to classify its drivers

24   as independent contractors – in violation of the express intent of the California legislature. This

25   ongoing defiance of the law constitutes willful violation of the California Labor Code.

26                          **JURISDICTION AND VENUE**

27         6.      This Court has jurisdiction over Plaintiffs' FSLA claims pursuant to 29 U.S.C. § 216

28   (b) and 28 U.S.C. § 1331.

7.      Jurisdiction in this case is based on 28 U.S.C. §§ 1332. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8.      In addition, this Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. section 1332(d). CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which there are at least 100 members of the class, and any member of a class of plaintiffs is a citizen of a state different from any defendant, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. (28 U.S.C. § 1332(d).)

9.      This case meets each of the CAFA requirements because (1) Plaintiff Gill alleges on information and belief there are approximately 3,500 class members in California, (2) there is diversity between at least one putative class member and the named Defendant; and (3) Plaintiff Gill alleges and believes the aggregate claims for wages and penalties exceed the jurisdictional $5,000,000.00 amount. As such, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d). This Court also has supplemental jurisdiction over Plaintiff Gill's state law claims pursuant to 28 U.S.C. § 1367.

10.      Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants are headquartered and regularly conduct business in this district.

## PARTIES

11.      Plaintiff TAJE GILL is a resident of Orange County, California. Plaintiff Gill has worked as a driver for Uber from August 2017 to the present.  On January 27, 2022, Mr. Gill notified Uber that he opted out of the arbitration agreement contained in his employment agreement, pursuant to section 13 of Uber's Technology Service Agreement, and/or section 13.8 "Your Right to Opt Out of this Arbitration Agreement."

12.      Plaintiff CRAIG LAMBERT is a resident of Phoenix, Arizona. Plaintiff Lambert has worked as a driver for Uber from June 19, 2018 to the present.  On January 13, 2022, Mr. Lambert notified Uber that he opted out of the arbitration agreement contained in his employment

CLASS AND COLLECTIVE ACTION COMPLAINT

agreement, pursuant to section 13 of Uber's Platform Access Agreement, and/or section 13.8 "Your Right to Opt Out of this Arbitration Agreement".

13.     Plaintiff WILLIAM COLLIGNON is a resident of Fort Worth, Texas. Plaintiff Collignon has worked as a driver for Uber from approximately September 2021 to the present.  On January 12, 2022, and January 29, 2022, Mr. Collignon notified Uber that he opted out of the arbitration agreement contained in his employment agreement, pursuant to section 13 of Uber's Platform Access Agreement, and/or section 13.8 "Your Right to Opt Out of this Arbitration Agreement".

14.     Plaintiff CHRISTINA FERREIRA is a resident of Mililani, Hawaii. Plaintiff Ferreira has worked as a driver for Uber from approximately April 2022 to the present.  On May 20, 2022, Ms. Ferreira notified Uber that she opted out of the arbitration agreement contained in her employment agreement, pursuant to section 13 of Uber's Platform Access Agreement, and/or section 13.8 "Your Right to Opt Out of this Arbitration Agreement".

15.     Defendant UBER TECHNOLOGIES, INC. ("Uber") is a transportation services company that provides drivers hailed and dispatched through Uber's mobile phone application. Uber is headquartered in San Francisco, California.

16.     Defendant RAISER, LLC ("Raiser") is a wholly owned subsidiary of Uber and handles and processes all payments to Uber drivers. Raiser is headquartered in San Francisco, California.

17.     Defendant PORTIER, LLC ("Portier") is a wholly owned subsidiary of Uber and handles and manages all the delivery services for its Uber drivers. Portier is headquartered in San Francisco, California.

18.     Defendant SCHLEUDER, LLC ("Schleuder", and collectively with Uber Raiser, and Portier, "Defendant") is a subsidiary of Uber, incorporated with Colorado Department of State, and headquartered in San Francisco, California.

## CONDUCT

19.     Defendant has tried to shield itself from liability for its blatant minimum wage violations by misclassifying its drivers as independent contractors. Uber drivers, however, are

employees. They are required to follow a litany of detailed requirements imposed on them by Uber and they are graded, and subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, their ability to reject rides, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.). Uber thus supervises the performance of drivers' work according to criteria set by Uber.

20.    At all times relevant hereto, Defendant has been an employer within the meaning of Section 3(d) of the FLSA.

21.    At all times relevant herein, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA.

22.    Defendant has had a gross volume of sales made or business done of at least $500,000 per annum.

23.    Uber's Platform Access Agreement, section 13, contains an arbitration provision, requiring drivers to resolve disputes with Uber on an individual basis through final and binding arbitration.  However, section 13 also provides that [drivers] "may choose to opt out of this arbitration provision by following the below instructions."

24.    Section 13.8 of Uber's Platform Access Agreement provides, in pertinent part: "Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with us. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision (subject to the pending litigation provision in Section 13.2, and the limitations set forth in this Section 13.8). To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver account to optout@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver account, and the city in which you reside."

25.    In January 2022, Mr. Gill accepted Uber's Platform Access Agreement.  On January 27, 2022, Mr. Gill sent Uber notice of his election to opt-out of Uber's arbitration agreement, as set forth under section 13 of Uber's Platform Access Agreement, and/or section 13.8 "Your Right to

Opt Out of this Arbitration Agreement".

26.    In January 2022, Mr. Lambert accepted Uber's Platform Access Agreement.  On January 13, 2022, Mr. Lambert sent Uber notice of his election to opt-out of Uber's arbitration agreement, as set forth under section 13 of Uber's Platform Access Agreement, and/or section 13.8 "Your Right to Opt Out of this Arbitration Agreement".

27.    In January 2022, Mr. Collignon accepted Uber's Platform Access Agreement.  On January 12, 2022, and again on January 29, 2022, Mr. Collignon sent Uber notice of his election to opt-out of Uber's arbitration agreement, as set forth under section 13 of Uber's Platform Access Agreement, and/or section 13.8 "Your Right to Opt Out of this Arbitration Agreement".

28.    In May 2022, Ms. Ferreira accepted Uber's Platform Access Agreement.  On May 20, 2022, Ms. Ferreira sent Uber notice of her election to opt-out of Uber's arbitration agreement, as set forth under section 13 of Uber's Platform Access Agreement, and/or section 13.8 "Your Right to Opt Out of this Arbitration Agreement".

29.    Defendant issued paychecks to Plaintiffs and all similarly situated employees during their employment.

30.    Defendant directed the work of Plaintiffs and similarly situated employees and benefitted from work performed that Defendant suffered or permitted from them.

31.    Uber communicates directly with customers and follows up with drivers if the customer complains that the ride failed to meet their expectations. Based on any customer feedback, Uber may suspend or terminate drivers at its sole discretion.

32.    Uber controls the hours and locations worked by the drivers via the Uber Driver App. Uber will automatically log out the driver from the Uber Driver App after 12 cumulative hours of work without a consecutive eight-hour break, thus making it impossible to work thereafter for at least eight hours. Uber also has the ability to deactivate its Driver App at any time, thus making it impossible for the driver to work while it is deactivated.

33.    Uber states in its Platform Access Agreement, effective on or about March 15, 2021, and updated on January 1, 2022, that it "may temporarily deactivate [a driver's] account without notice to investigate whether [a driver] [has] engaged in…activity that is…harmful to our brand,

business or reputation, or that violates this Agreement…" Uber also advises it "may terminate this Agreement or permanently deactivate [driver's] account without notice if [Uber] determine[s] in [its] discretion that a Material Breach or Violation has occurred." Uber also states in its Platform Access Agreement that drivers "can find out more about Ratings and how they may affect [driver's] ability to access [Uber's] Platform by vising [Uber's] website."

34.    Previously, in its Technology Services Agreement,[1] Uber stated that it "retains the right to deactivate or otherwise restrict you [driver] from accessing or using the Driver App or the Uber Services in the event of a violation or alleged violation of this Agreement, your disparagement of Company or any of its Affiliates, your act or omission that causes harm to Company's or its Affiliates' brands, reputation or business as determined by Company in its sole discretion." Uber also states in the Technology Services Agreement that, "[i]n order to continue to receive access to the Driver App and the Uber Services, you [driver] must maintain an average rating by Users that exceeds the minimum average acceptable rating established by Company for your Territory, as may be updated from time to time by Company in its sole discretion ("Minimum Average Rating")." Uber further "reserves the right, at any time in Company's sole discretion, to deactivate or otherwise restrict you [driver] from accessing or using the Driver App or the Uber Services if you [driver] fail to meet the requirements set forth in the [Technology Services] Agreement."

35.    Uber requires its drivers to use electronic mobile devices, such as cell phones, to access the Driver App. Uber encourages its drivers to use their own mobile devices in order to provide transportation services and does not reimburse drivers for the cost and maintenance of the driver's mobile device and the necessary wireless data plan. If a driver elects to use an Uber provided electronic mobile device, the driver is required to reimburse Uber for the costs associated with the wireless data plan of each such device and/or a deposit for each device.

36.    Uber controls the method of pay for the drivers and sets the fare for each ride.

37.    Uber prohibits drivers from setting rates of pay for their services; rather, their rates

---

[1] On or about March 15, 2021, Uber replaced the term "Technology Services Agreement" with "Platform Access Agreement" as the title for its employment agreement between itself and drivers.

are determined by Uber. Uber "reserves the right to change the Fare Calculation at any time in the Company's discretion based upon local market factors." Uber, moreover, reserves the right to adjust the fare for a particular instance of transportation services if the driver takes an inefficient route, i.e., a route different than the one provided by Uber on the Driver App.

38.    Uber controls the work and directs the manner in which the drivers perform their work. Via the Uber Driver App, Uber provides its drivers with the only instrumentality by which a driver can perform services for Uber. Uber issues each of its drivers a Driver ID. The Driver ID enables the driver to access and use the Driver App on a mobile electronic device or cell phone. In its Technology Services Agreement, Uber informs drivers that it "reserves the right to deactivate your Driver ID if you have not fulfilled a request for Transportation Services using the Driver App at least once a month." Through the Driver App, Uber sets the passenger pick up location. Uber only provides the driver with the location of the passenger for pick up, and does not disclose the destination of the passenger, until the pickup has been made. If the Uber driver declines the ride once the destination is provided, the driver is given a negative rating and potential deactivation of the driver's Uber account.

39.    Uber tracks each driver's location on the Driver App and recommends that the driver follow the route provided on the Driver App. If the driver does not follow the route provided by Uber on the Driver App, the driver's fare will be reduced if the alternate route takes longer.

40.    Uber thus maintains control, oversight, and discretion over its operations, including the work of Plaintiffs and similarly situated drivers.

41.    Uber may terminate drivers at any time and may "deactivate [the] Driver ID immediately, without notice," if drivers "no longer qualify, under applicable law or the standards and policies of Company and its Affiliates, to provide Transportation Services or to operate the Vehicle" or as otherwise set forth in the Technology Services Agreement, and/or Platform Access Agreement.

42.    Uber is in the business of providing transportation servicers to passengers, and that is the service that Plaintiffs and the other Uber drivers provide. The drivers' servicers are fully integrated into Uber's business, and without the drivers, Uber would not exist.

-35-

43.     Plaintiffs, the Collective Action Members, and the California Class Members, performed their work in the normal course of Uber's business and their work was integrated into Uber's business.

44.     Defendant's improper and illegal, company-wide policy, pattern and/or practice of mischaracterizing Defendant's labor force as "independent contractors" improperly reduced Defendant's labor cost, thereby fraudulently increasing the appearance of Defendant's profitability.

45.     Defendant's company-wide policy, patterns and/or practice of misclassifying its employees as independent contractors was knowing and intentional.

46.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant misclassified Plaintiffs and other similarly situated current and former employees, as independent contractors exempt from coverage of the minimum wage and overtime provisions of the FLSA, the California Labor Code, and other local and state wage and hour laws.

47.     Additionally, Uber has violated California Labor Code §§ 1194 and 1197 by failing to assure that drivers, including Plaintiff Gill, make the applicable minimum wage for all hours worked, after accounting for their expenses and other deductions taken from their pay. The hours they work include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride.

48.     Plaintiffs, the Collective Action Members, and the California Class Members also worked in excess of 40 hours per work week without being paid overtime wages in violation of the FLSA, California Labor Code and other local and state wage and hour laws.

49.     Uber has violated Cal. Lab. Code §§ 1194, 1198, and 510 by failing to pay its drivers the appropriate overtime premium for all overtime hours worked beyond forty per week or eight per day.

50.     The number of hours Plaintiffs, the Collective Action Members, and the California Class Members worked per week can be ascertained from Defendant's records, including the trip logs maintained on the Uber app.

51.     Further, throughout the relevant time period, Uber has required its drivers to maintain and provide a safe, clean, functioning, insured and legally-operable automobile to make

deliveries. Uber has also required its drivers to bear the "out-of-pocket" costs associated with their vehicles, including vehicle maintenance and repairs, insurance, and gas.

52.    Uber does not reimburse drivers for any expenses they incur while working for Uber, including, but not limited to, the cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the Uber Application. Drivers incur these costs as a necessary expenditure to work for Uber, which California law and the FLSA requires employers to reimburse.

53.    Upon information and belief, Uber represents to its employees that it will reimburse them for business expenses they incur in connection with their employment with Uber.  Uber communicates its business expense reimbursement policy through a published company manual, published policies and through its conduct in reimbursing such expenses.

54.    Defendant systematically under-reimbursed its drivers for vehicular wear and tear, gas, tolls, airport fees, and other driving-related expenses, thereby ensuring that the majority of Defendant's drivers are effectively paid well below the minimum wage.

55.    The Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes. In 2019, the IRS rate was $0.58 per mile.  In 2020, the IRS rate was $0.57.5 per mile. In 2021, the IRS rate was $0.56 per mile.  As of January 1, 2022, the IRS rate is $0.58.5 per mile.

56.    Thus, during the relevant period, the actual "out-of-pocket" costs that Uber's drivers paid to provide a safe, functioning, insured and legally-operable automobile was a minimum of $0.56 per mile and a maximum of $0.58.5 per mile.

57.    Plaintiffs and other Uber drivers were paid per ride at rates above the hourly minimum wage. However, the rate per ride was not sufficient to offset Plaintiffs and other Uber drivers' actual "out-of-pocket" costs incurred and thus netted out to be less than minimum wage for all hours on the job.

58.    As a result, Uber has underpaid Plaintiffs and other drivers who opted out of Uber's arbitration agreement, fails to pay minimum wages for all hours worked after deduction of the work-related expenses, and fails to pay overtime wages for all hours worked in excess of 40 hours

1  per work week in violation of the FLSA, California Labor Code and other local and state wage and
2  hour laws.

3  **CLASS DEFINITIONS AND CLASS ALLEGATIONS**

4  59.    Plaintiff Taje Gill brings this case on behalf of himself and on behalf of the
5  California Class, pursuant to Fed. R. Civ. P. 23, defined as all current and former Uber drivers in
6  the state of California who during the relevant time period are or were classified as "independent
7  contractors" and who opted out of Uber's arbitration agreement. The Class Period is from March
8  12, 2019, until the trial of this action ("Class Period").

9  60.    Defendant violated the California Labor Code and the regulations promulgated
10  thereunder by failing to pay proper minimum and overtime wages to Plaintiff Gill and other
11  putative California Class Members and failing to reimburse their business expenses.

12  61.    The California Class is so numerous that joinder of all members is impracticable.

13  62.    Although the precise number of such persons is unknown, these similarly situated
14  employees are known to Defendant, are readily identifiable, and can be located through Defendant's
    records.

15  63.    **Numerosity/Impracticability of Joinder**:    The members of the class are so
16  numerous that joinder of all members would be unfeasible and impracticable. Plaintiff Gill
17  estimates, on information and belief, that there are at minimum 3,500, or more, members of the
18  California Class.    The identity of individuals qualifying for class membership is readily
19  ascertainable via inspection of the personnel records and other documents maintained by Defendant
20  in the normal course of business. Class members may be notified of the pendency of this action by
21  mail, electronic mail, the Internet, or published notice.

22  64.    **Existence of Predominance of Common Questions of Law and Fact**:    Common
23  questions of law and fact and common answers exist as to all members of the Class. These
24  questions predominate over any questions affecting only individual Class members. All California
25  Class Members were treated in a similar fashion and suffered similar harm as a consequence of
26  Defendant's conduct, as alleged. These common legal and factual questions and answers include:

27              a.   Whether Defendant employed Plaintiff Gill and the California Class Members
28                   within the meaning of California Law;

-38-

     b.  The nature and extent of the class-wide injury and the appropriate measure of damages for the California Class;

     c.  Whether Defendant failed to pay Plaintiff Gill and the California Class the legally required minimum wage for hours worked in excess of 40 hours per workweek, in violation of the California Labor Code;

     d.  Whether Defendant failed to reimburse Plaintiff Gill and the California Class for necessary business expenses, in violation of the California Labor Code;

     e.  Whether Defendant is liable for all damage claimed by Plaintiff Gill and the California Class, including, without limitation, compensatory and statutory damages, interest, costs and disbursements, and attorneys' fees.

65. **Typicality:** Plaintiff Gill's claims are typical of the claims of the members of the class, and the named plaintiff has the same interests as the other members of the class.

66. **Adequacy:** Plaintiff Gill is an adequate representative of the class he seeks to represent because his interests do not conflict with the interests of the members of the class. Plaintiff Gill has retained counsel competent and experienced in complex class action litigation and Plaintiff Gill intends to prosecute this action vigorously. Plaintiff Gill does not anticipate any difficulty managing this litigation. The interests of the members of the class will be fairly and adequately protected by Plaintiff Gill and his counsel.

67. **Superiority and Substantial Benefit:**  The class action is superior to other available means for the fair and efficient adjudication of Plaintiff Gill's and the California Class members' claims. The damages suffered by each individual California Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the California Class members to redress the wrongs done to them on an individual basis. Even if members of the California Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

68.    The Class should also be certified because:

a.   The prosecution of separate actions by individual members of the California Class would create a risk of inconsistent or varying adjudications with respect to individual California Class members which would establish incompatible standards of conduct for Defendant;

b.   The prosecution of separate actions by individual members of the California Class would create a risk of adjudication with respect to them, which would, as a practical matter, be dispositive of the interests of the other California Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.   Defendant has acted or refused to act on grounds generally applicable to the California Class, and/or the general public, thereby making appropriate final and injunctive relief with respect to the California Class as a whole.

## COLLECTIVE CLASS ALLEGATIONS

69.    Plaintiffs bring the First Cause of Action for violations of the FLSA as a Collective Action pursuant to 29 U.S.C. §§ 207 and 216(b), on behalf of all individuals who from July 13, 2017, to the present are or were Uber drivers in the United States classified as "independent contractors" and who opted out of Uber's arbitration agreement, with the exception of Uber drivers in the State of New York, who are a part of the collective alleged in *Aquino v. Uber Technologies, Inc., et al.*, Case No., 1:22-cv-04267, United States District Court for the Southern District of New York (the "FLSA Collective Action Members").

70.    Defendant is liable under the FLSA for, inter alia, failing to pay proper minimum wage and overtime wages to Plaintiffs and other similarly situated employees.

71.    There are many similarly situated current and former Uber drivers who opted out of Uber's arbitration agreements and who have not been paid proper minimum wages and overtime wages, in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the Collective pursuant to 29 U.S.C. § 216(b).

72.     The names and addresses of the FLSA Collective Action Members are available from Defendant.   Accordingly, Plaintiffs pray for an order requiring Defendant to provide the names and all available contact information for all FLSA Collective Action Members so that notice can be provided to them of the pendency of this action, and their right to opt-in to this action. Plaintiffs further pray that the applicable statute of limitations be tolled based on, among other reasons, Defendant's violations regarding its failure to pay proper minimum wage and overtime wages to Plaintiffs and other similarly situated employees.

**FIRST CAUSE OF ACTION**
**(Fair Labor Standards Act (29 U.S.C. §§207;**
**211(c), 215(a), 216(b), 255(a)); 29 C.F.R. §516, *et seq.*)**
**(Brought on Behalf of Plaintiffs and All Collective Action Members, as defined in paragraph 72, above)**

73.     Plaintiffs, on behalf of themselves and all Collective Action Members, repeat, reiterate and reallege each and every allegation of the preceding paragraphs as if they were set forth herein at length.

74.     At all relevant times, Defendant has been, and continues to be, an employer within the meaning of FLSA.

75.     Defendant employs Plaintiffs, and employed and/or continues to employ, each of the Collective Action Members, within the meaning of FLSA.

76.     Defendant has and continues to engage in a policy, pattern and/or practice of violating the FLSA, as detailed in this Complaint.

77.     Plaintiffs have consented in writing to be party to this action, pursuant to 29 U.S.C. § 216(b).

78.     The minimum wage and overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq.*, apply to Defendant.

79.     At all relevant times and continuing to the present time, Defendant had a policy pattern and/or practice of failing to pay minimum wage and overtime compensation to its employee drivers misclassified as independent contractors.

80.     As a result of Defendant's willful failure to compensate its employees, including Plaintiffs and the Collective Action Members, at minimum wage, and its willful failure to compensate Plaintiffs and the Collective Members at a rate not less than one and one- half times the

regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant has violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including  29 U.S.C. § § 207(a)(1) and 215(a).

81.    As a result of Defendant's FLSA violations, Plaintiffs, on behalf of themselves, and the Collective Action Members, are entitled (a) to recover from Defendant their unpaid wages for all of the hours worked by them at minimum wage and at one and a half times the regular rate of pay as overtime compensation for all hours worked in excess of 40 hours per week, (b) to recover an additional, equal amount as liquidated damages, and (c) to recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

82.    Because Defendant's violation of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

<u>**SECOND CAUSE OF ACTION**</u>
**FAILURE TO PAY MINIMUM WAGES**
**(Violation of California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199; and the applicable Industrial Welfare Commission ("IWC") Wage Order)**
**(Brought on Behalf of Plaintiff Gill and the California Class Members)**

83.    Plaintiff Gill, on behalf of himself and all California Class Members, repeat, reiterate and reallege each and every allegation of the preceding paragraphs as if they were set forth herein at length.

84.    At all relevant times, Plaintiff Gill and the California Class Members were employed by Defendant within the meaning of the California Labor Code, and Defendant was an employer within the meaning of California Labor Code.

85.    Pursuant to California Labor Code §§ 1182.12, 1194, 1194.2, and 1197, it is unlawful for a California employer to suffer or permit an employee to work without paying wages for all hours worked, as required by the applicable IWC Wage Order.

86.    Pursuant to the applicable IWC Wage Order, Defendant is required to pay Plaintiff Gill and the California Class for all hours worked, meaning all the time in which an employee is subject to the control of the employer.

87.    During the relevant time period, the California Class Members including Plaintiff Gill have not been paid minimum wages for all hours suffered or permitted to work in violation of

1    the minimum wage provisions of California Labor Code §§ 1182.12, 1194, 1194.2, 1197, and the

2    applicable IWC Wage Order.

3        88.    Defendant has intentionally failed and refused, and continues to fail and refuse, to

4    pay California Class Members, including Plaintiff Gill, minimum wages for all time suffered or

5    permitted to work.

6        89.    Plaintiff Gill, on behalf of himself and the California Class, request the recovery of

7    unpaid minimum wages, waiting time penalties, liquidated damages, interest, attorneys' fees, and

8    costs pursuant to California Labor Code §§ 1194, 1194.2, 1197.1, and 1199.

### THIRD CAUSE OF ACTION
**FAILURE TO PAY OVERTIME WAGES**
**(Violation of California Labor Code § 510, 1194, 1198, and the applicable IWC Wage Order)**
**(Brought on Behalf of Plaintiff Gill and the California Class Members)**

11        90.    Plaintiff Gill, on behalf of himself and all California Class Members, repeat, reiterate

12    and reallege each and every allegation of the preceding paragraphs as if they were set forth herein at

13    length.

14        91.    California Labor Code §510 and the applicable IWC Wage Order provide that

15    employees in California shall not be employed more than eight hours in any workday or forty hours

16    in a workweek unless they receive additional compensation beyond their regular wages in amounts

17    specified by law.  Specifically, California Labor Code §510(a) requires that: Any work in excess of

18    eight hours in one workday and any work in excess of 40 hours in any one workweek and the first

19    eight hours worked on the seventh day of work in any one workweek shall be compensated at the

20    rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in

21    excess of 12 hours in one day and/or after eight hours on the seventh consecutive day of any work

22    week shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

23        92.    California Labor Code § 1194 establishes an employee's right to recover unpaid

24    overtime compensation, and interest thereon, together with the costs of suit, and attorneys' fees.

25    California Labor Code §1198 makes employment of an employee for longer hours than the IWC set

    or under conditions the IWC prohibits is unlawful.

26        93.    At all relevant times, Plaintiff Gill and the California Class Members were employed

27    by Defendant within the meaning of the California Labor Code, and Defendant was an employer

28    within the meaning of California Labor Code.

94.     At all times relevant hereto, Defendant has failed to pay Plaintiff Gill, and the California Class Members, the overtime compensation premium for those unpaid hours they have worked in excess of the maximum hours permissible by law as required by Labor Code § 510, 1198, and the applicable Wage Order.

95.     Defendant acted and is acting intentionally and oppressively toward Plaintiff Gill, and California Class Members, with a conscious disregard of their rights, or the consequences to them, with the intent of depriving them of property and legal rights and otherwise causing them injury.

96.     Plaintiff Gill and the California Class, request recovery of overtime compensation according to proof, interest, attorneys' fees, expenses, and costs pursuant to California Labor Code § 1194(a), and Civil Code §§3287(b) and 3289, as well as the assessment of any statutory penalties against Defendant, in a sum as provided by the California Labor Code, the applicable IWC Wage Orders, and/or other statutes.

## FOURTH CAUSE OF ACTION
### FAILURE TO REIMBURSE INCURRED NECESSARY BUSINESS EXPENSES
#### (Violation of Labor Code § 2802, *et seq.*)
#### (Brought on Behalf of Plaintiff Gill and the California Class Members)

97.     Plaintiff Gill, on behalf of himself and all California Class Members, repeat, reiterate and reallege each and every allegation of the preceding paragraphs as if they were set forth herein at length.

98.     California Labor Code § 2802 provides that an employer must reimburse employees for all necessary expenditures.

99.     At all relevant times during the class period, Plaintiff Gill and California Class Members incurred necessary business-related expenses and costs that were not fully reimbursed by Defendant, including, but not limited to, the cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the Uber Application.

100.    Defendant has intentionally and willfully failed to fully reimburse Plaintiff Gill and the California Class Members for necessary business-related expenses and costs. Defendant's conduct violates California Labor Code § 2802.

101.    Plaintiff Gill and the California Class Members are entitled to recover from

CLASS AND COLLECTIVE ACTION COMPLAINT

Defendant their business-related expenses incurred during the course and scope of their employment, plus interest, pursuant to California Labor Code § 2802.

**FIFTH CAUSE OF ACTION**
**FAILURE TO PROVIDE PROPERLY ITEMIZED WAGE STATEMENTS**
**(Violation of Labor Code §226, 226.3, and the applicable IWC Wage Order)**
**(Brought on Behalf of Plaintiff Gill and the California Class Members)**

102.    Plaintiff Gill, on behalf of himself and all California Class Members, repeat, reiterate and reallege each and every allegation of the preceding paragraphs as if they were set forth herein at length.

103.    Uber's conduct, as set forth above, in failing to provide proper itemized wage statements, as required by California law, violates California Labor Code §§ 226(a) and the applicable IWC Wage Order.

104.    Cal. Lab. Code § 226 provides that an employer must furnish employees with an accurate itemized statement in writing showing: gross wages earned, total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under the applicable order of the Industrial Welfare Commission, the number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, net wages earned, the inclusive dates of the period for which the employee is paid the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

105.    In violation of California Labor Code § 226, as a result of misclassifying Plaintiff Gill and the California Class Members as independent contractors, Defendant knowingly and intentionally failed to provide Plaintiff Gill and the California Class Members with accurate semimonthly itemized wage statements showing all hours worked and all wages owed at all

applicable rates.

106.    As a direct and proximate result of Defendant's knowing and intentional failure to provide accurate or complete information on the wage statements furnished to Plaintiff Gill and the California Class Members as mandated by section 226, Plaintiff Gill and the California Class Members suffered injury.

107.    As provided in Labor Code section 226(e), Plaintiff Gill and the California Class Members are entitled to, and therefore seek to recover liquidated damages of fifty ($50.00) dollars for the initial pay period in which the violation occurred, and one hundred ($100.00) dollars for each violation in subsequent pay periods according to proof at the time of trial, for up to four thousand ($4,000.00) for each Plaintiff and each respective member of the Class, plus reasonable attorney's fees and costs pursuant to Labor Code section 226(g).

108.    Labor Code §226.3 provides that any employer who violates §226(a) shall further be subject to a civil penalty of $250 per employee per violation with an initial citation and one thousand ($1,000) dollars per employee for each violation in a subsequent citation for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in §226(a).

109.    Defendant has committed and continue to commit the acts alleged herein knowingly and willfully.

110.    Such a pattern and practice and uniform administration of corporate policies and practices as described herein is unlawful and creates an entitlement to recovery by the Plaintiff Gill, and the California Class, in a civil action, for all damages and/or penalties pursuant to Labor Code §§226, including interest thereon, attorneys' fees, and costs of suit.

## SIXTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq*.)**
**(Brought on Behalf of Plaintiff Gill and the California Class Members)**

111.    Plaintiff Gill, on behalf of himself and all California Class Members, repeat, reiterate and reallege each and every allegation of the preceding paragraphs as if they were set forth herein at length.

112.    Cal. Bus. And Prof. Code § 17200 defines unfair competition as any unlawful, unfair, or fraudulent business act or practice.

113.    Defendant's conduct, as set forth above, in continuing to classify drivers as independent contractors notwithstanding the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court*, 4 Cal.5th 903, 416 P.3d 1 (2018), *reh'g denied* (June 20, 2018), the California Legislature's passage of A.B. 5, and the newly amended California Labor Code § 2750.3 which sets forth the "ABC" test to define "employee" for purposes of the California Labor Code, all of which makes clear that Uber drivers are employees under California law, violates Cal. Lab. Code § 226.8.

114.    Uber's willful misclassification and other conduct, as set forth above, violates the California Unfair Competition Law, Cal. Bus. § Prof. Code § 17200 *et seq.* ("UCL"). Uber's conduct constitutes unlawful business acts or practices, in that Uber has violated California Labor Code §§ 2802, 1194, 1198, 510, 554, 1197, 1194, 1192.1212, 1194.2, 1197.1, 1199, 226.8, and 226(a) .

115.    As a result of Uber's unlawful conduct, Plaintiff Gill and the California Class Members suffered injury in fact and lost money and property, including, but not limited to, business expenses that drivers were required to pay and wages to drivers that were due. Pursuant to California Business and Professions Code § 17203, Plaintiff Gill and the California Class Members seek declaratory and injunctive relief for Uber's unlawful conduct and to recover restitution. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff Gill and the California Class Members who worked for Uber are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

116.    Plaintiff Gill has standing to assert this claim because he has suffered and/or will suffer an injury in fact and has lost and/or will lose money as a result of Defendant's conduct, in that they are not reimbursed for business expenses and not paid for all hours worked, not provided with compliant and accurate wage statements, among other of Defendant's violations as specified in the preceding paragraphs of this Complaint.

117.    Business and Professions Code Section 17203 states, in part: "Any person who

engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

118.    Plaintiff Gill has assumed the responsibility of enforcement of the laws and public policies specified here by suing on behalf of himself and other similarly situated members of the general public who are employed by Defendants in California. Plaintiff Gill's success in this action will enforce important rights affecting the public interest. Plaintiff Gill will incur a financial burden in pursuing this action in the public interest, and an award of injunctive relief would confer a significant benefit on the public. Pursuant to Code of Civil Procedure § 1021.5, Plaintiff Gill requests that the court award reasonable attorneys' fees and costs incurred by Plaintiff and the California Class in this action.

## PRAYER

WHEREFORE, Plaintiffs, on behalf of themselves, the Collective Action Members, and the California Class Members, pray for judgment against Defendant as to the appropriate causes of action as follows:

A.    Designation of this action as an FLSA collective action on behalf of Plaintiffs and the Collective Action Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective Action Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

B.    Certification of the California Class as a class action pursuant to Fed. R. Civ. P.23, and the appointment of Plaintiff Gill and his counsel to represent the members of the California Class;

C.    A declaratory judgment that the practices complained of herein are unlawful under the

FLSA and the California Labor Code;

D.  An injunction requiring Defendant to cease its unlawful practices under the California Labor Code and to comply with the law;

E.  An award of unpaid wages at minimum wage after payment of work-related out-of-pocket expenses, and for all hours worked in excess of 40 in a workweek at a rate of one and one-half the regular rate of pay under the FLSA and the California Labor Code;

F.  An award of unreimbursed business expenses under company policy and California Labor Code § 2802;

G.  For actual damages or statutory penalties under Labor Code § 226(e);

H.  An award of liquated damages pursuant to 20 U.S.C. § 216 and California Labor Code § 1194.1;

I.  For restitutionary disgorgement pursuant to the UCL;

J.  An award of prejudgment and post-judgment interest;

K.  An award of costs and expenses of this action together with reasonable attorneys' fees; and

L.  Such other and further relief as this Court deems just and proper.


DATED: February 3, 2023                               **THE MARKHAM LAW FIRM**

David R. Markham
Maggie Realin
Lisa Brevard

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF &
ANDERSON LLP**
90 Broad Street, 2nd Floor
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 964-9620
*canderson@gslawny.com*

Roosevelt N. Nesmith, Esq.
**LAW OFFICE OF**

1

**ROOSEVELT N. NESMITH LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042 Tel: (973)
259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

2

3

4

5

Russell S. Warren, Jr.
**LAW OFFICES**
**OF RUSSELL S. WARREN, JR.**
473 Sylvan Avenue Englewood Cliffs, NJ
07632 Tel. (201) 503-0773
Fax: (201) 503-0776
*mail@rwarrenlaw.com*

6

7

8

9

*Attorneys for Plaintiffs, the Putative
Collective, and California Class*

10

11 <u>**DEMAND FOR JURY TRIAL**</u>

12    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury.

13

14 DATED: February 3, 2023                **THE MARKHAM LAW FIRM**

15

16

David R. Markham
Maggie Realin
Lisa Brevard

17

18

19

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF &**
**ANDERSON LLP**
90 Broad Street, 2nd Floor
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 964-9620
*canderson@gslawny.com*

20

21

22

23

24

Roosevelt N. Nesmith, Esq.
**LAW OFFICE OF**
**ROOSEVELT N. NESMITH LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

25

26

27

28

CLASS AND COLLECTIVE ACTION COMPLAINT

Russell S. Warren, Jr.
**LAW OFFICES**
**OF RUSSELL S. WARREN, JR.**
473 Sylvan Avenue
Englewood Cliffs, NJ 07632
Tel. (201) 503-0773
Fax: (201) 503-0776
*mail@rwarrenlaw.com*

*Attorneys for Plaintiffs, the Putative*
*Collective, and California Class*

CLASS AND COLLECTIVE ACTION COMPLAINT