UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA FERREIRA,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 23-cv-00518-JST<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: ECF No. 35 |

Before the Court is Defendants Uber Technologies, Inc. ("Uber") and Rasier, LLC's ("Rasier") motion to compel arbitration. ECF No. 35. The Court will grant the motion.

## I.   BACKGROUND

### A.   Factual Background

Uber is a technology company that "develops proprietary software used to create digital marketplaces that are operated through app-based platforms" that "connect individual consumers in need of services with those willing to provide those services." ECF No. 35-1 at 2. Plaintiff Christina Ferreira "has worked as a driver for Uber from approximately April 2022 to the present." ECF No. 1 ¶ 14.

Drivers who work for Uber "must license and download Uber's 'Driver App.'" ECF No. 35-1 at 2. To license the application, the drivers must agree to platform access agreements with Uber and its subsidiaries, Rasier, Schleuder, LLC, and Portier LLC. *Id.* at 2–3. On April 22, 2022, Ferreira entered into a platform access agreement with "Uber . . .; Rasier-PA, LLC in Pennsylvania; Rasier-DC, LLC in Florida; Rasier-MT, LLC in Montana; Rasier-NY, LLC in New York; and Rasier[] . . . in all other U.S. states, territories and possessions" ("Rasier PAA). *Id.* at 4, 12, ECF No. 39-1 ¶ 2. The agreement also stated that "[f]or the sake of clarity and depending on

the context, references to 'Uber,' 'we,' 'our' and 'us' may also refer to the appropriate Uber-affiliated contracting entity accordingly or Uber collectively." ECF No. 35-1 at 12 (emphasis omitted). That same day Ferreira entered into a platform access agreement with Schleuder ("Schleuder PAA"). *Id.* at 4, 40, 39-1 ¶ 2. The Schleuder PAA contained similar language as that in the Rasier PAA regarding the use of "we," "our," and "and" in the agreement: "[f]or the sake of clarity and depending on the context, references to 'we,' 'our' and 'us' may also refer to Uber." ECF No. 35-1 at 40 (emphasis omitted). On May 2, 2022, Ferreira entered into a platform service agreement with Portier, which contained the same language as the Schleuder PAA regarding the references to "we," "our," and "us" in the agreement ("Portier PAA"). ECF Nos. 35-1 at 4, 63, 39-1 ¶ 2.

These agreements contain arbitration provisions. ECF No. 35-1 at 25–38, 54–61, 77–90. Specifically, they contain the following language in bold font prior to the terms of the arbitration provisions: "**PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW**." *Id.* at 25, 54, 77. The arbitration provisions state, in relevant, that:

> [The arbitration provisions] appl[y] to any legal dispute, past, present or future, arising out of or related to your relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries, or parent companies (each of which may enforce th[e] . . . [p]rovision[s] as third party beneficiaries), and termination of that relationship, and survive[] after the relationship terminates.

*Id.* at 25, 78; *accord id.* at 54–55.

Additionally, the provisions contain a class action waiver, stating, in relevant part that:

> [Y]ou agree that any and all disputes or claims between the parties shall be resolved only in individual arbitration, and not on a class, collective, coordinated, or consolidated basis on behalf of others. There will be no right or authority for any dispute . . . to be brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, or consolidated action, or for you or us to participate as a member in any such class, collective, coordinated, or consolidated proceeding.

*Id.* at 33, 86; *accord id.* at 58.

2

Finally, the arbitration provisions provide a right to opt out of the provisions:

> [Y]ou may opt out . . . . To do so, within 30 days of the date that th[e] [a]greement is electronically accepted by you, you must send an electronic email from the email address associated with your driver account . . . , stating your intent to opt out of th[e] . . . [p]rovision, as well as your name, the phone number associated with your driver account, and the city in which you reside.

*Id.* at 37, 60, 89. The Rasier PAA states that "any opt out . . . does not affect the validity of any other arbitration agreement between you and us." *Id.* at 37. On May 20, 2022, Ferreira timely and validly opted out of the arbitration provision contained in the Rasier PAA, but not the Schleuder PAA or the Portier PAA. ECF Nos. 35-1 at 4–6, 92, 39-1 ¶ 3.

### B. Procedural History

On February 3, 2023, Ferreira and Taje Gill, Craig Lambert, William Collignon brought this putative class action against Uber, Rasier, Schleuder, and Portier on behalf of themselves and "all individuals who from July 13, 2017, to the present are or were Uber drivers in the United States classified as 'independent contractors' and who opted out of Uber's arbitration agreement, with the exception of Uber drivers in the State of New York[.]" ECF No. 1 ¶ 69. On June 7, 2023, the Court granted the parties' joint motion to dismiss (1) all the claims of Gill, Lambert, and Collignon; and (2) Ferreira's claims against Portier and Schleuder. ECF No. 33 at 1. Accordingly, the only remaining parties are Plaintiff Ferreira, and Defendants Uber and Rasier, and the only remaining cause of action is for violations of the Fair Labor Standards Act ("FLSA"). *See id.*; ECF No. 1 ¶¶ 73–82.

Defendants now move to compel this action to arbitration. ECF No. 35. Ferreira opposes, ECF No. 39, and Defendants filed a reply, ECF No. 40.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

3

of any contract." 9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration.  *Id.* § 3.

If a valid arbitration agreement exists, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.   DISCUSSION

The parties agree that the Schleuder PAA and Portier PAA are valid agreements to arbitrate any disputes between Ferreira and Schleuder or Portier.  *See* ECF Nos. 35, 39, 41.  The parties dispute, however, whether Defendants as non-signatories of the Schleuder PAA and Portier PAA have standing to compel Ferreira to arbitrate her FLSA claim.  ECF Nos. 35 at 12–19, 39 at 9–17, 41 at 2–7. Specifically, the parties dispute whether (1) the question of whether Defendants have standing is one of arbitrability to be decided by the arbitrator; and (2) if the question of standing is one for the Court, whether Defendants constitute third party beneficiaries to the Schleuder PAA and the Portier PAA.  ECF Nos. 35 at 12–19, 39 at 9–17, 41 at 2–7.

### A.   Delegation of Arbitrability

Defendants argue that there is "no dispute regarding contract formation here" because Ferreira "entered into valid PAAs with both Schleuder and Portier."  ECF No. 40 at 3. Accordingly, the only question at issue "is whether the scope of the arbitration provisions in those agreements are broad enough to cover disputes with Schleuder's and Portier's parent company,

4

Uber, and affiliate, Rasier," which is clearly delegated to under the Schleuder PAA and Portier PAA.  *Id.*  Ferreira responds that because she has "not agreed to arbitrat[e] [claims against Defendants], it follows that . . . Ferreira has not agreed to delegate the issue of arbitrability to the arbitrator either."  ECF No. 39 at 11.  Therefore, Ferreira argues that Defendants' standing to compel arbitration is a question of "whether an arbitration agreement exists," and therefore, it belongs to the Court.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)).  "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."  *First Options of Chi. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (internal citations omitted).  Whether the court or an arbitrator decides arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  *Howsam*, 537 U.S. at 83 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986)).  Although courts generally resolve such ambiguities in favor of arbitration, ambiguities regarding the delegation of arbitrability are resolved in favor of court adjudication.  *See First Options*, 514 U.S. at 944–45.  "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'"  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

Accordingly, when a non-signatory seeks to enforce a clause that delegates the issue of arbitrability, "the threshold issue of whether the delegation clause is even applicable to [the non-signatory] must be decided by the Court."  *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012); *accord In re Midland Credit Mgmt., Inc. Tel. Consumer Prot. Litig.*, No. 11MD2286-MMA (MDD), 2019 WL 398169, at *6 (S.D. Cal. Jan. 31, 2019).  "[T]he Court must first decide which parties are bound by delegation clause, before the arbitrator can decide the

5

interpretation and scope of the arbitration clause." *Id.* The delegation clauses in an arbitration provision apply to non-signatories if there is "clear and unmistakable evidence that the [signatories] and [non-signatories] agreed to arbitrate arbitrability." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013). In *Kramer*, the Ninth Circuit held that the district court, not the arbitrator, should decide issues of arbitrability even though the plaintiff agreed to arbitrate arbitrability with the other signatory to the arbitration agreement. *Id.* at 1127–28. The Ninth Circuit explained that the agreement to arbitrate arbitrability applied only to claims between the signatories "because the arbitration clause [was] limited to claims between 'you and us'— i.e.[,]" the signatories of the agreement. *Id.* at 1128.

     Here, while Ferreira may have agreed to arbitrate arbitrability with Schleuder and Portier, there is not clear and unmistakable evidence that Ferreira agreed to do so with Rasier or Uber. The arbitration provisions contain the same "you or us" limitation that appeared in *Kramer*, demonstrating that any agreement to arbitrate arbitrability is limited to the PAAs' signatories, i.e., Ferreira, Schleuder, and Portier: "[t]his [a]rbitration [p]rovision applies to all claims whether brought by you or us[.]" ECF No. 35-1 at 55, 78. The agreements do state that "depending on the context, references to . . . us . . . may also refer to Uber." *Id.* at 40, 63. However, the fact that the arbitration provision *may* also be referring to claims brought by Uber is not clear or unmistakable evidence. Additionally, while the paragraph that precedes the delegation clause states that the arbitration agreement "applies to any legal dispute . . . arising out of or related to your relationship with us or relationship with any of our . . . affiliates . . . or parent companies (each of which may enforce the [a]rbitration [p]rovision as third party beneficiaries)," "'arising out of' refers exclusively to the subject matter of a dispute, while 'between' refers to which parties are involved." *Schulz v. BMW of N. Am., LLC*, 472 F. Supp. 3d 632, 639 (N.D. Cal. 2020). Accordingly, "[b]ecause the provision references third parties only when discussing subject matters delegated to an arbitrator," and not when referencing the parties involved, "the arbitration provision will not apply here" because Schleuder and Portier are no longer parties. *Id.* Thus, the question of whether Uber and Rasier may enforce the arbitration provisions in the Schleuder PAA and Portier PAA is one for the Court. *See, e.g.*, *id.* at 636, 638–39 (concluding that the question of

1    arbitrability was one for the district courts where the arbitration provision applied to "[a]ny claim
2    or dispute, . . . (including the interpretation and scope of this Arbitration Provision, and the
3    arbitrability of the claim or dispute), between you and us . . . which arises out of or relates to your
4    . . . relationship (including any such relationship with third parties who do not sign this
5    contract)[.]").

### B.    Third-Party Beneficiaries

Defendants argue that they have standing to compel Ferreira to arbitrate under the Schleuder PAA and Portier PAA because the agreements "contemplate enforcement by Rasier and Uber as third-party beneficiaries." ECF No. 40 at 6. Ferreira argues that Defendants lack standing because "they are not identified as third-party beneficiaries in the" Schleuder PAA or the Portier PAA. ECF No. 39 at 15.

"State law determines whether a non-signatory to an agreement containing an arbitration clause may compel arbitration." *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022). Under California law, non-signatories who are third-party beneficiaries to the arbitration agreement may compel arbitration. *Ronay Family Ltd. P'ship v. Tweed*, 26 Cal. App. 4th 830, 838 (2013). To qualify as a third-party beneficiary, the non-signatory is "obligated to prove that 'express provisions of the contract,' considered in light of the 'relevant circumstances,' show that (1) 'the third party would in fact benefit from the contract;' (2) 'a motivating purpose of the contracting parties was to provide a benefit to the third party;' and (3) permitting the third party to enforce the contract 'is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.'" *Ngo*, 23 F.4th at 946 (quoting *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019)). To determine whether allowing a third party to enforce an arbitration agreement is consistent with the objectives of the agreement and reasonable expectations of the party, courts "focus on 'the language of the contract and all of the relevant circumstances under which the contract was entered into' to determine if 'third party enforcement will effectuate the contracting parties' performance objectives, namely those objectives of the enterprise embodied in the contract, read in light of surrounding circumstances.'" *Ngo*, 23 F.4th at 948 (emphasis omitted) (quoting *Goonewardene*, 6 Cal. 5th at 830–31).

7

The express language of the arbitration agreements demonstrate that Defendants would benefit from the agreement, that the agreements were designed to benefit them, and that allowing Defendants to enforce the arbitration agreement is also consistent with the objectives of the contract and the reasonable expectations of the contracting parties. Ferreira entered into these agreements as a condition of her work with Uber and her use of the Rasier, Schleuder, and Portier technology platforms. The arbitration agreements "appl[y] to any dispute . . . arising out of or related to [Ferreira's] relationship with [Schleuder or Portier] or relationship with any of [their] agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries, or parent companies (each of which may enforce [the provisions] as third party beneficiaries)[.]" ECF No. 35-1 at 54–55, 78. Uber falls under this provision because it is the parent company of Schleuder and Portier. *Id.* at 4. Additionally, as another subsidiary of Uber, Rasier constitutes an affiliate of Schleuder and Portier, and therefore, is also covered by this provision. *Id.* Because the agreements do not define "affiliate," the Court must "rely on the ordinary definition" of the word. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020); *see also* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning[.]"). "An affiliate is normally understood as 'a company effectively controlled by another or associated with others under common ownership or control.'" *Revitch*, 977 F.3d at 717 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009)); *see also* Cal. Corp. Code § 150 ("A corporation is an 'affiliate' of . . . another specified corporation if it . . . is under common control with the other specified corporation."). Therefore, Rasier is an affiliate of Schleuder and Portier because they are all under common ownership. Accordingly, the express language of the agreements permits Uber, as Schleuder and Portier's parent company, and Rasier, as Schleuder and Portier's affiliate, to enforce the agreements as third-party beneficiaries. Additionally, the arbitration agreement, as written, would benefit Defendants by permitting them to compel arbitration of employment-related disputes with Ferreira. *Compare Ngo*, 23 F.4th at 946–47 (holding that non-signatory failed to prove it would benefit from a contract which provided that only specified parties could compel arbitration because any prospective benefit to the non-signatory was

8

"predicated on the decisions of others to arbitrate").

Ferreira's arguments to the contrary are unavailing. First, relying on *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013), Ferreira argues that Defendants are not third-party beneficiaries because the agreements did not specifically name Uber or Rasier as intended third-party beneficiaries. ECF No. 39 at 15. Ferreira reads *Murphy* too narrowly. It is well-established that "[i]t is 'not necessary that the beneficiary be named and identified as an individual. A third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit it was made.'" *Ronay Fam. Ltd. P'ship*, 216 Cal. App. 4th at 838–39 (quoting *Garratt v. Baker*, 5 Cal. 2d 745, 748 (1936)). In *Murphy*, the Ninth Circuit held that BestBuy was not a third-party beneficiary of a contract between a consumer and DirecTV, a separate company, because the agreement contained a third-party beneficiary provision that named another entity, but not BestBuy. 724 F.3d at 1234. In contrast, here, the agreements state that parent companies and affiliates of Schleuder and Portier, i.e., Uber and Rasier, may enforce the agreements as third-party beneficiaries. *See* ECF No. 35-1 at 54–55, 78.

Second, Ferreira argues that listing third-party beneficiaries as "parent companies" and "affiliates" was "ambiguous and confusing." ECF No. 39 at 16. However, "[a]mbiguity exists when a contractual provision is susceptible of two or more reasonable constructions, *Benach v. County of Los Angeles*, 149 Cal. App. 4th 836, 847 (2007), and Ferreira does not offer an alternative construction of the provision stating that parent companies and affiliates of Schleuder and Portier are third-party beneficiaries of the Schleuder PAA and Portier PAA. Instead, Ferreira argues that because she "was presented with (and agreed to) Uber and Schleuder's PAAs at the same time, to the minute," "[i]t is plausible that a reasonable person would believe that opting out of one contract, whose language is almost identical to the other contract is sufficient." ECF No. 39 at 16. But the terms of the Rasier PAA, Schleuder PAA, and Portier PAA are unambiguous on this point: the Rasier PAA states that "[a]ny opt out of this [a]rbitration [p]rovision does not affect the validity of any other arbitration agreement between you and us," ECF No. 35-1 at 37, and the Schleuder PAA and Portier PAA state that parent companies and affiliates of Schleuder and Portier, which includes Uber and Rasier, may enforce those agreements

9

as third-party beneficiaries, *id.* at 54–55, 78.

Accordingly, the Court concludes that Defendants are third-party beneficiaries to the arbitration agreement, such that Defendants may enforce the agreement and compel arbitration.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to compel arbitration, and this case is hereby stayed.

Upon completion of the arbitration proceedings, the parties shall jointly submit to the Court, within fourteen days, a report advising the Court of the outcome of the arbitration, and request that the case be dismissed or that the case be reopened and a case management conference be scheduled. In the meantime, the Clerk shall administratively close this case.

**IT IS SO ORDERED.**

Dated: November 3, 2023



_____
JON S. TIGAR
United States District Judge

10